IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY O'NEILL, et al | : | CIVIL ACTION |
| v. | : | |
| THE PHILADELPHIA HOUSING AUTHORITY, et al | : | NO. 11-0173 |

**MEMORANDUM OPINION**

**Savage, J.**  June 28, 2011

In this action brought pursuant to 42 U.S.C. § 1983, the five plaintiffs claim that in violation of their First and Fourteenth Amendment rights, their employer retaliated against them after they reported to their supervisor that a former coworker had been extorting money from contractors. They sued the Philadelphia Housing Authority ("PHA"), the employer; Daniel Quimby, their supervisor; and Carl Greene, the former executive director of PHA. The defendants have moved to dismiss the complaint,[1] contending that the plaintiffs have failed to state a claim because the speech in question is not protected under the First Amendment.

We conclude that the plaintiffs' speech is not protected by the First Amendment because they spoke out as employees and not as private citizens. Therefore, because they have failed to state a claim upon which relief can be granted, the plaintiffs' amended complaint will be dismissed.

---

[1] The PHA and Quimby filed a joint motion to dismiss. Greene filed a separate motion. Without waiting for a decision on these pending dispositive motions, PHA and Quimby's new attorneys filed an answer with affirmative defenses followed by a motion for judgment on the pleadings. In the later motion, these defendants reiterate the same arguments made in the motion to dismiss and add a contention that Quimby is entitled to qualified immunity.

**Background**[2]

PHA is a non-profit public agency that provides housing for low-income Philadelphia residents. Occasionally, PHA hires outside contractors to repair, renovate and maintain its properties. PHA's Small Contracts Department is responsible for awarding contracts for non-routine jobs that cost less than $25,000 to outside contractors. For each contract, an employee within the department, a rehabilitation specialist, defines the scope of the work and estimates the cost. Pre-qualified contractors then bid for the job. The lowest bidder is awarded the contract.

Plaintiffs Harry O'Neil, Jose Nunes, John Modres, Drucilla Smith and Osgood Pope worked as employees in the Small Contracts Department. O'Neil was a supervisor in the department; Nunes, Modres, Smith and Osgood were "rehabilitation specialists." In December 2008, a contractor informed O'Neil and Nunes that a former PHA employee in charge of awarding small contracts had been extorting money from contractors and giving special preference to one. The plaintiffs reported this allegation to Daniel Quimby, PHA's General Manager of Maintenance.[3] At the employer's direction, the plaintiffs were subsequently interviewed by PHA's lawyers concerning the allegations.

After reporting the allegations, O'Neil was "relieved of his supervisor responsibilities . . . and . . . was forced to retire in February 2009." *Pl. Amend. Compl.* at 26. Nunes,

---

[2] As we must at this stage, we accept the facts alleged in the complaint as true and draw all reasonable inferences from them in favor of the plaintiffs.

[3] The amended complaint is confusing. It alleges that O'Neill and Nunes received the report of the extortion. But, in the next sentence, it alleges that all of the plaintiffs told Quimby of the report. During oral argument, plaintiffs' counsel clarified that only O'Neill and Nunes knew of and reported the extortion. Because Modres, Smith and Pope did not report the extortion to Quimby, they could not have been retaliated against in violation of the First Amendment. Nevertheless, for purposes of these motions, we shall treat them as having reported the allegation.

Modres, Smith and Pope "were assigned new supervisors . . . [and] have not been given any work even though they remain on PHA's payroll." *Pl. Amend. Compl.* at 27.[4] The plaintiffs allege that these job actions were in retaliation for reporting the extortion allegations to Quimby and the lawyers and in violation of their rights under the First and Fourteenth Amendments.

## Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiffs. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although this standard "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim "tests the legal sufficiency of plaintiff's claim." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). A complaint is subject to dismissal if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

---
[4] Nunes, Modres, Smith and Pope are still employed by the PHA.

129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The mere pleading of "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557).

**Discussion**

In Count One of their complaint, the plaintiffs allege that Greene and Quimby retaliated against them in violation of the First Amendment. Count Two asserts a *Monell* claim against PHA[5], alleging that the agency had a policy or practice of permitting retaliation against employees for exercising their First Amendment rights and for failing to properly train its employees.

To state a First Amendment retaliation claim, a plaintiff must allege that the activity in question was protected by the First Amendment and that it was a substantial factor in the alleged retaliation. *Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir. 2005); *Armbruster v. Cavanaugh*, No. 09-1006, 2010 WL 816385, at *3, (E.D. Pa. March 9, 2010). Whether the speech is protected is a question of law. *Gorum v. Sessoms,* 561 F.3d 179, 184 (3d Cir. 2009). Whether it was a substantial factor in the alleged retaliation is a question of fact. *Id.* Thus, as a threshold matter, we must determine whether the speech at issue was protected because if it was not, there is no First Amendment cause of action. *Garcetti v. Ceballos,* 547 U.S. 410, 418-419 (2006); *Bush v. S.C. Adams,* No. 07-4936, 2011 WL 1899449, at *8 (E.D. Pa. May 19, 2011) ("[A]s a threshold matter, a public

---

[5] Count Two of the complaint also names Greene and Quimby in their "official capacities." Naming an official in his official capacity is the same as naming the government entity itself. *Allen v. Montgomery County*, No. 09-1458, 2009 WL 4042761, at *5 (E.D. Pa. Nov. 19, 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Because that count names PHA, naming Greene and Quimby in their official capacities is redundant.

4

employee must be speaking as a citizen about a matter of public concern to invoke constitutional protection.").

A public employee's statement is protected by the First Amendment when: (1) the employee spoke as a citizen and not in his capacity as an employee; (2) the statement involved a matter of public concern; and (3) the employer did not have "an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 418.

In determining whether a public employee spoke as a citizen, we look to the context in which he spoke. *Garcetti*, 547 U.S. at 421. When a public employee makes a statement pursuant to his official duties, he is not speaking as a citizen for First Amendment purposes, in which case his speech is not protected. *Id.* at 421; *Cindrich v. Fisher*, 341 Fed. App'x 780, 786 (3d Cir. 2009) ("[E]ven if an employee's speech touches on a matter of public concern, it is not protected speech 'as a citizen' if it was made pursuant to the employee's official duties.") (citing *Garcetti,* 547 U.S. at 421)). That the employee made the statement in the workplace and not to the public is not dispositive. Nor does the fact that the statement concerned a matter of employment disqualify the speech from being protected. The "controlling factor" is whether the statement was made pursuant to his official duties. *Garcetti*, 547 U.S. at 411. Therefore, the critical question is whether the employer was speaking on the issue as part of his official duties or outside the scope of his employment.

The plaintiffs argue that they engaged in protected speech when they notified Quimby of the extortion allegations and when they were subsequently interviewed by PHA lawyers. They contend that they were not speaking pursuant to their job duties when they

5

notified Quimby of the extortion allegations because they are not law enforcement officers and it is not their job "to investigate and thwart extortion or keep[ ] a watchful eye on their coworkers." *Pl. Omnibus Resp. Brief,* p. 18. According to the plaintiffs, their only job was to "inspect ongoing construction at the PHA to determine that a contractor is performing the contract in accordance with the specifications of the contract." *Pl. Omnibus Resp. Brief,* p. 18.

Even when an employee "exceed[s] the expectations of his formal job description . . . [it] does not mean [that he acted outside] the scope of his duties." *Foraker v. Chaffinch,* 501 F.3d 231, 242 (3d Cir. 2007). Whether an employee's speech is part of his official duties is a practical inquiry. *Garcetti*, 547 U.S. at 424. We look not only to the employee's explicit job description, but to his implicit obligations as a public employee. Here, it would not be reasonable and practicable to conclude that regardless of their official job duties, the plaintiffs did not have a duty to report an allegation received during the course of their employment that a fellow employee in the Small Contracts Department had engaged in improper and illegal conduct by extorting money.[6]

The Third Circuit has held that an employee's speech may be part of his official duties "if it relates to 'special knowledge' or 'experience' acquired through his job." *Gorum*, 561 F.3d at 185 (quoting *Foraker*, 501 F.3d at 240); *see also Cindrich*, 341 Fed. App'x at

---

[6] In their complaint, the plaintiffs appear to concede that they were acting pursuant to their job duties when they informed Quimby of the extortion. In a paragraph detailing their protected speech, the plaintiffs included a sentence alleging that they "performed their job functions as mandated by the defendants, federal law, federal regulation, state and local laws, ordinances and codes, and in accordance with the Philadelphia Housing Authority's personnel policies." *Pl. Amend. Compl.* at 31. Because this sentence is oddly placed within the complaint and seems to contradict the plaintiffs' contention that they were not speaking as employees when they reported the extortion, we shall assume its inclusion in that particular paragraph was in error. Indeed, plaintiffs' counsel admitted as much during oral argument.

6

788. According to the complaint, a PHA contractor informed O'Neill and Nunes of the extortion. *Pl. Amend. Compl.* at 20. The information was imparted to them as employees in PHA's Small Contract's Department. Thus, there is no doubt that the plaintiffs gained the knowledge through their job.

Although not dispositive, the fact that the plaintiffs reported the extortion to only Quimby, the supervisor who could investigate it, supports the conclusion that they were speaking pursuant to their job duties. *See Gooden v. Commonwealth of Pennsylvania,* No. 10-3792, 2010 WL 5158996, at *5 (E.D. Pa. Dec. 10, 2010) (that plaintiff only reported a complaint to her employer "reinforces the conclusion that she spoke as an employee") (citing *Foraker,* 501 F.3d at 243). Courts have consistently found that when employees report complaints up the chain-of-command, they are speaking pursuant to their official duties. *See, e.g., Foraker*, 501 F.3d at 243 (holding that an employee reporting complaints up the chain-of-command is acting within his job duties); *Cindrich,* 341 Fed. App'x at 787 (plaintiff's speech in chain-of-command letters not protected); *Armbruster*, 2010 WL 816385 at, *3 (plaintiff was "complaining about his job function up the chain of command of his department, and caselaw dictates this speech fell within his official duties"). Because the plaintiffs reported the misconduct to Quimby in his managerial capacity as part of their job, and not to law enforcement or public officials, their speech was not protected.

The plaintiffs claim that their communications to PHA's lawyers is protected speech because it is not part of their official job duties and PHA ordered them to speak to the lawyers. The same argument has been rejected by the Third Circuit. *See Foraker,* 501. F.3d at 243. Because the plaintiffs' report to Quimby was within their job duties, their subsequent speech to the PHA's lawyers was also within the scope of their duties. *Id*.

("Because the speech that motivated the order was within their job duties, the responsibility to respond to the subsequent order was also within the scope of their duties."). It was their duty to cooperate in the investigation of alleged misconduct in the work place which they had reported as part of their job duties.

Because the plaintiffs were speaking pursuant to their official duties when they reported allegations of extortion to Quimby and the PHA's lawyers, they have failed to state a claim for First Amendment retaliation against Greene and Quimby.

The plaintiffs' have also failed to state a claim against the PHA. A *Monell* claim cannot exist without a constitutional injury to the plaintiffs. *See Marable v. West Pottsgrove Twp.,* 176 Fed. App'x 275, 283 (3d Cir. 2006) ("[A] municipality may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no constitutional injury."); *Persico v. City of Jersey City*, 67 Fed. App'x 669, 676 (3d Cir. 2003) ("Proof of a constitutional injury is a threshold requirement for a *Monell* claim."); *Lincoln v. Hanshaw*, No. 08-4207, 2009 WL 1259099, at *11 (E.D. Pa. May 6, 2009). The only constitutional injury asserted in the amended complaint is for First Amendment retaliation. Because the plaintiffs have failed to state a claim under the First Amendment, there is no constitutional hook for their *Monell* claim. *Lincoln*, 2009 WL 1259099, at *11.[7][8]

## Conclusion

Because the plaintiffs were not speaking as citizens, but rather as employees, when

---

[7] During oral argument, plaintiffs conceded that their *Monell* claim cannot survive independent of their First Amendment retaliation action.

[8] Despite sounding like one, this is not an action brought under the Pennsylvania Whistleblower Act. It is presented as a federal constitutional claim. Although it might have survived as a state cause of action, it cannot as a federal one.

they reported allegations of extortion to Quimby and PHA's lawyers, they have failed to state a First Amendment cause of action. Because there is no constitutional injury, their *Monell* claim also fails. Therefore, the amended complaint will be dismissed.